**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DONEGAL SERVICES, LLC and | ) | |
| CRANA SERVICES, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 20 C 1990 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| INTERNATIONAL UNION OF OPERATING | ) | |
| ENGINEERS, LOCAL 150, AFL-CIO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant's motion to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is granted in part and denied in part for the reasons explained below.

**BACKGROUND**

Plaintiffs, Donegal Services, LLC ("Donegal") and Crana Services, LLC, brought this action under the Labor Management Relations Act ("LMRA") and the National Labor Relations Act ("NLRA") against the International Union of Operating Engineers, Local 150, AFL-CIO (the "Union"). Plaintiffs allege that the Union engaged in unfair labor activities by conducting "secondary boycott picketing" at the locations of various third-party suppliers and customers of plaintiffs; picketing at Donegal's facility; ordering and/or coercing third parties to stop doing business with Donegal or to interfere with the conduct of Donegal's business; and posting inflatable rats and banners near the entrances of third parties who did or do business with Donegal. Plaintiffs further allege that the Union's conduct has caused them to suffer millions of dollars in damages and damaged their client relationships.

Plaintiffs assert two claims against the Union. Count I of the amended complaint is for injunctive relief under section 302 of the LMRA, 29 U.S.C. § 186, for "improperly attempt[ing] to obtain, by force, coercion, and illegal picketing causing a secondary boycott, something of value from Donegal, namely that Donegal recognize [the Union] as the bargaining representative of their [sic] employees." (ECF No. 15, Am. Verified Compl. ¶ 61.) Count II of the amended complaint is for damages under section 303 of the LMRA, 29 U.S.C. § 187, for unfair labor practices in violation of the NLRA, 29 U.S.C. § 158(b)(4) and (b)(7).

The Union moves to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## DISCUSSION

For purposes of a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiffs, accepts as true all well-pleaded facts therein, and draws all reasonable inferences in plaintiffs' favor. *See Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017); *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A Rule 12(b)(1) motion, in contrast, challenges federal jurisdiction, and the plaintiffs bear the burden of establishing that the elements necessary for jurisdiction are met. *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015).

**A.** **Section 303 of the LMRA (Count II)**

    **1.** **Rats and Banners**

"Section 303 of the LMRA, 29 U.S.C. § 187(a), prohibits unions from engaging in any activity or conduct defined as an unfair labor practice in section 158(b)(4)." *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 433 F.3d 1024, 1034 (7th Cir. 2006). Section 158(b) of the NLRA, in turn, provides as follows in pertinent part:

> It shall be an unfair labor practice for a labor organization or its agents--
> . . .
>
> (4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is--
>> . . .
>> (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing[.]

29 U.S.C. § 158(b)(4).

The Union first contends that plaintiffs fail to state a claim for damages under § 303 because "a Union's use of rats and banners to publicize a labor dispute is not tantamount to picketing, does not violate Section 8(b)(4) of the NLRA, and is protected speech under the First Amendment of the United States Constitution," absent confrontational and/or intimidating conduct associated with traditional picketing. (ECF No. 22, Def.'s Mem. Supp. Mot. Dismiss at 4.) The Union cites, *inter alia*, *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988), in which the Supreme Court construed the prohibitions of § 8(b)(4) narrowly and invoked the principle set forth in *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." (*Id.* at 4-5.) The Union further argues that "handbilling" alone, without picketing, is not coercion under § 8(b)(4), and that under decisions of the NLRB, stationary "rat and banner activity" is protected speech under the First Amendment and not violative of the NLRA. The Union also cites *Ohr v. International Union of Operating Engineers, Local 150*, No. 18 C 8414, 2020 WL 1639987 (N.D. Ill. Apr. 2, 2020), in which Judge Feinerman granted the Union's motion for summary judgment where the NLRB had sought interim injunctive relief against the Union for its rat-and-banner activity regarding Donegal at the same secondary employers' facilities at issue in the instant action. Judge Feinerman concluded that, "even viewing the record in the light most favorable to the [NLRB], Local 150's use of stationary banners and inflatable rats at secondary employer locations was constitutionally protected and thus not proscribed by the NLRA." *Id.* at *6.

Plaintiffs respond that they have alleged facts that are not discussed in the Union's motion and from which the Court can plausibly infer that the Union violated § 8(b)(4). Plaintiffs point to their allegations that the Union cut off Donegal's supply of stone and aggregate by going to the quarries where those materials are located and threatening and coercing the quarries' owners and managers to stop doing business with Donegal; engaged in unlawful secondary boycott picketing against plaintiffs at a Buona Beef location; appealed to employees at the Settler's Hill dump site to interfere with unloading a Donegal truck; appealed to employees at the Boughton Materials quarry to refuse to load a Donegal truck; and threatened Boughton Materials with picketing if it continued to allow material for Donegal to be picked up. (ECF No. 29, Pls.' Resp. at 2-3 (citing Am. Verified Compl. ¶¶ 2-3, 26-29).) Plaintiffs also argue that rat-and-banner activity is not completely free from regulation and that the issue of whether such activity constitutes picketing regulated by § 8(b)(4) is "very much in flux" and currently pending before the NLRB in another case. (*Id.* at 7.) Further, plaintiffs argue that the decisions cited by the Union are distinguishable because they did not involve allegations similar to plaintiffs' allegations of unlawful secondary boycotting.

In contrast to the procedural posture of *Ohr*, which was before Judge Feinerman on summary judgment, this case is at the pleadings stage. The Union's arguments go to the merits of plaintiffs' claims and are thus inappropriate on a motion to dismiss, especially given that the alleged wrongful conduct goes beyond the use of rats and banners. The Union appears to be attempting to carve out a portion of plaintiffs' allegations, but whether its activities were impermissibly coercive and in violation of the NLRA is a fact-bound inquiry that concerns the entirety of those activities. At the motion-to-dismiss stage, the only question before the Court is

3

whether plaintiffs have alleged sufficient facts to state a plausible claim. They have done so. Accordingly, the Court denies the Union's motion to dismiss the § 303 claim on this basis and denies its request for Rule 11 sanctions.

### 2.      Res Judicata/Collateral Estoppel Regarding WillCo Green Activity

Next, the Union asserts that plaintiffs' § 303 claim, to the extent it relates to a third party called WillCo Green, is "subject to *res judicata* and/or collateral estoppel." (Def.'s Mem. Supp. Mot. Dismiss at 2, 9-11.)  The Union argues that the issue of damages "for alleged secondary picket and banner conduct by Local 150 at WillCo Green in Plainfield, Illinois . . . has already been addressed by" Judge Feinerman in *Ohr* as well as an administrative law judge in unfair labor practice proceedings before the NLRB.  The Union states in conclusory fashion, without citation to authority, that the findings of Judge Feinerman and the ALJ are "binding on Donegal." (*Id.* at 10.)  Aside from the fact that res judicata and collateral estoppel are affirmative defenses not ordinarily considered on a motion to dismiss, the Union also fails to set out their elements or develop any argument as to why those elements are met here.  By failing to develop the argument or support it with legal authority, the Union waives it.  *See Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019).

### 3.      Section 8(b)(7) of the NLRA

The Union also challenges plaintiffs' right to damages for the alleged violation of § 8(b)(7) of the NLRA, which prohibits certain instances of "recognitional" picketing (where the object is to force or require the employer to recognize or bargain with the union, or to force or require the employer's employees to select the union as their collective-bargaining representative).  The Union maintains that, while § 303 of the LMRA states that it is unlawful for a labor organization to "engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title," and that whoever is injured by reason of such a violation may sue in federal court for damages, nowhere does it provide for damages for violations of § 8(b)(7).  29 U.S.C § 187.

Plaintiffs argue that they have stated a claim for damages for violation of § 8(b)(7) by virtue of their allegations that the Union picketed Donegal at its facility and other locations, without a valid petition under § 9(c) of the NLRA having been filed within a reasonable period of time from the commencement of the picketing, and that the Union engaged in this conduct with a mixed motive—part primary and part secondary.  In support of this argument, plaintiffs cite a single decision, *Mautz & Oren, Inc. v. Teamsters, Chauffeurs, & Helpers Union, Local No. 279*, 882 F.2d 1117, 1121 (7th Cir. 1989), in which the Seventh Circuit stated that where a union acts with "mixed motives," partially primary and partially secondary, its conduct is unlawful under § 8(b)(4).

Essentially, plaintiffs contend that conduct that violates § 8(b)(7) also violates § 8(b)(4) where a union acts with mixed motives.  But *Mautz* does not stand for that proposition.  The Court in *Mautz* was clarifying the standard for demonstrating illegal motivation in the context of secondary boycotting, for purposes of § 8(b)(4).  The decision does not even mention § 8(b)(7), and plaintiffs' position is contrary to the plain language of the relevant statutory text.

Accordingly, to the extent that plaintiffs' claim for damages is based on a violation of § 8(b)(7), it is dismissed with prejudice.

**B.      Section 302 of the LMRA (Count I)**

Next, the Union maintains that there is no private right of action for injunctive relief under § 302 of the LMRA, 29 U.S.C. § 186. "Section 302 of the [LMRA] makes it a crime for an employer to willfully give money to a labor union and for a labor union to willfully accept money [or "other thing of value"] from an employer." *Ohlendorf v. United Food & Com. Workers Int'l Union, Local 876*, 883 F.3d 636, 640 (6th Cir.) (citations omitted), *cert. denied sub nom. Ohlendorf v. Local 876, United Food & Com. Workers Int'l Union*, 139 S. Ct. 198 (2018). In *Ohlendorf*, the Sixth Circuit held that there is no private right of action, express or implied, under § 302. There is little law on the issue.

In response, plaintiffs cite *Mulhall v. Unite Here Local 355*, 667 F.3d 1211, 1213 (11th Cir. 2012), in which the Eleventh Circuit held that organizing assistance offered by an employer to a labor union can be a "thing of value" under § 302. Plaintiffs also rely on dictum in *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 205 n.19 (1962), *overruled in part on other grounds by Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970), to the effect that § 302 "expressly permit[s] suits for injunctions previously proscribed by the Norris-LaGuardia Act to be brought in the federal courts by private litigants."

The Court in *Mulhall* did not expressly address whether a private right of action exists under § 302. As for the *Sinclair Refining* dictum, it appears in a footnote, without analysis. Moreover, Justice Breyer, in dissenting from the dismissal of the writ of certiorari in *Mulhall* as improvidently granted, questioned the "legal status" of the *Sinclair Refining* dictum "in light of the Court's more restrictive views on private rights of action in recent decades." *Unite Here Local 355 v. Mulhall*, 571 U.S. 83, 85 (2013) (Breyer, J., dissenting). It is this Court's view, based on the persuasive reasoning of *Ohlendorf*, that § 302 does not create a private right of action. As the Sixth Circuit noted, § 302 imposes criminal penalties for violations; nothing in the provision says that private parties may enforce it; and it "does not say anything about the individuals protected or their capacity to file a lawsuit" under the standard created. 883 F.3d at 641; *see also Volvo Grp. N. Am., LLC v. Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am.*, 451 F. Supp. 3d 570, 576 (W.D. Va. 2020) (relying on *Ohlendorf* and concluding that § 302 does not create a private right of action). The Sixth Circuit also explained that, while § 302(e) provides courts with jurisdiction to enjoin violations of the statute, it does so only at the request of the Attorney General or in suits brought under express private rights of action, "as a needed exception to the Clayton Act and the Norris-LaGuardia Act's ban on labor-

dispute injunctions." 883 F.3d at 642-43. Because a private right of action does not exist under § 302 of the LMRA, Count I will be dismissed with prejudice for failure to state a claim.[1]

## C. Attorneys' Fees

The Union's final argument is that the Court should dismiss plaintiffs' request for attorneys' fees because that type of relief is not available for a violation of § 303. The Supreme Court has held that attorneys' fees are not recoverable as damages in a suit brought under § 303 when the fees were incurred in prior proceedings before the NLRB. *Summit Valley Indus., Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 726 (1982); *Bennett v. Local Union No. 66,* 958 F.2d 1429, 1440 n.9 (7th Cir. 1992).

In their prayer for relief, plaintiffs seek, specifically, a damages award that includes expenses that "do not relate to attempts to terminate the picketing," (Am. Verified Compl. ¶ 77), which they contend can include attorneys' fees for work done to "negotiate with neutral contractors to mitigate the damage caused by" the Union's secondary boycotting activities. (Pls.' Resp. at 15.) Plaintiffs argue that their request is warranted by *Abreen Corp. v. Laborers' International Union, N.A.*, 709 F.2d 748, 760 (1st Cir. 1983), in which the First Circuit concluded that expenses that did not "relate to attempts to terminate the picketing," including attorneys' fees the plaintiff incurred in negotiating with a third party that had been a target of the unlawful secondary picketing, were compensable as actual damages. In its reply brief, the Union does not reply to plaintiffs' argument, so the Court finds that the Union has waived its challenge to the prayer for this relief. *See United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008).

## CONCLUSION

Defendant's motion to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [21] is granted in part and denied in part. The Court dismisses with prejudice plaintiffs' claim under section 303 of the LMRA, but only to the extent it is based on a violation of section 8(b)(7) of the NLRA. The Court also dismisses Count I, plaintiffs' claim for injunctive relief under section 302 of the LMRA, with prejudice. The remainder of defendant's motion is denied.

---

[1] The Union seeks to dismiss Count I under Rule 12(b)(1) on the basis that the Court "lacks jurisdiction" to enter injunctive relief. (ECF No. 37, Def.'s Reply at 1.) The Seventh Circuit, however, has repeatedly said that the existence of a private right of action is not jurisdictional. *See, e.g., Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 458 (7th Cir. 2007). The lack of a private right of action still "spells dismissal," but under Rule 12(b)(6), because the plaintiff cannot state a claim on which it is entitled to relief. *Hardiman v. Lipnic*, No. 18 C 5702, 2020 WL 1939068, at *4 (N.D. Ill. Apr. 22, 2020).

**DATE:** October 8, 2020

**Hon. Ronald A. Guzmán**
**United States District Judge**